UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LASHAN BRIDGES,

        Plaintiff,

Case No. 1:22-cv-1112

Hon. Paul L. Maloney

v.

MEIJER, INC.,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

This is a civil action brought by Lashan Bridges ("plaintiff") against defendant Meijer, Inc. ("defendant"). This matter is now before the Court on defendant's motion to dismiss (ECF No. 5).

**I.     Background**

Plaintiff is a citizen of Illinois. Compl. at ¶ 22 (ECF No. 1, PageID.4). Defendant is a Michigan corporation with its principal place of business in Michigan, with stores throughout Michigan, Illinois, Indiana, Kentucky, Ohio, and Wisconsin. *Id*. at ¶¶ 23 and 34, at PageID.4-5. Plaintiff alleged that defendant "manufactures, labels, markets, and sells three percent hydrogen peroxide solution identified as an antiseptic promoted 'For Treatment of Minor Cuts and Abrasions' under the Meijer brand ('Product')." *Id*. at ¶ 1, PageID.1. Plaintiff alleged that defendant's "representation the Product should be used 'For Treatment of Minor Cuts and Abrasions' tells consumers it will assist in healing by shortening healing time, when this statement is false, misleading, and not authorized by any applicable body." *Id*. at ¶ 2, PageID.2. Plaintiff alleged that "[a]s a result of the false and misleading representations, the Product is sold at a

premium price . . .  higher than similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions." *Id*. at ¶19, PageID.4.

Plaintiff set out the following allegations regarding her purchase of the Product:

46.    Plaintiff purchased the Product at locations including Meijer, 755 E Boughton Rd, Bolingbrook, IL 60440, between May 2022 and June 2022, among other times.

47.    Plaintiff believed and expected the Product could treat minor cuts and abrasions because that is what the representations and omissions said and implied, on the front label and the absence of any references or statements elsewhere.

48.    Plaintiff paid more for the Product than she would have had she known the representations with respect to "Treatment of Minor Cuts and Abrasions" were false and misleading, and she would not have bought it or would have paid less.

49.    Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, and/or images on the Product, on the labeling, statements, omissions, claims, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

50.    Plaintiff bought the Product at or exceeding the above-referenced price.

51.    Plaintiff paid more for the Product than she would have she known the representations and omissions were false and misleading, or would not have purchased it.

52.    The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

*Id*. at PageID.6-7.

Plaintiff did not set out separate numbered counts. Based on the complaint, it appears that plaintiff has alleged six counts, some of which contain multiple causes of action:

**Count I** (Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.* and Michigan Consumer Protection Act, § 445.901, *et seq*.). Compl. at PageID.9.

2

**Count II** (Violation of State Consumer Fraud Acts / Consumer Fraud Multi-State Class). *Id.* Plaintiff does not cite any statutes.

**Count III** (Breaches of Express Warranty, Implied Warranty of Merchantability / Fitness for a Particular Purpose and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* (MMWA)). *Id.* at PageID.9-11. Plaintiff does not cite any statutes except for the MMWA.

**Count IV** (Negligent Misrepresentation). *Id.* at PageID.11.

**Count V** (Fraud). *Id.* at PageID.12.

**Count VI** (Unjust Enrichment). *Id.*

In addition to her individual claims, plaintiff includes "Class Allegations" for two classes pursuant to Fed. R. Civ. P. 23. First, an "Illinois and Michigan Class" consisting of "All persons in the States of Illinois and Michigan who purchased the Product during the statutes of limitations for each cause of action alleged[.]" *Id.* at ¶ 56, PageID.8. Second, a "Consumer Fraud Multi-State Class" consisting of "All persons in the States of Ohio, Indiana, Kentucky, and Wisconsin who purchased the Product during the statutes of limitations for each cause of action alleged." *Id.*

Plaintiff seeks the following relief: certification of a class action with her as representative and her attorneys as counsel for the class; preliminary and permanent injunctive directing defendant to correct the challenged practices to comply with the law; "money, statutory and/or punitive damages and interests"; costs and expenses; and, reasonable fees for plaintiff's attorneys and experts. *Id.* at PageID.12.

## II.   Legal Standard

Defendant has moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) because it fails to state a claim upon which relief may be granted. Defendant's Motion (ECF No.

5). A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

### III. Discussion

**A. Plaintiff's state-law claims are expressly preempted because they seek to impose requirements in addition to those established by federal law.**

Defendant contends that the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, expressly preempts plaintiff's state law claims. Specifically, that

> To establish national uniformity for over the counter (OTC) drug labeling, Congress prohibited the states from establishing "any [labeling] requirement . . . that is different from or in addition to, or that is otherwise not identical with, a requirement" imposed under federal law. 21 U.S.C. § 379r(a)(2).

Defendant's Brief (ECF No. 6, PageID.31.).

"The federal preemption doctrine has grown out of the Supremacy Clause of the United States Constitution, which provides in part 'the Laws of the United States which shall be made in Pursuance' of the Constitution 'shall be the supreme Law of the Land.' " *State Farm Bank*

4

*v. Reardon*, 539 F.3d 336, 341 (6th Cir. 2008) (quoting U.S. Const., Art. VI, cl. 2). For purposes of the Supremacy Clause, "[t]he phrase 'Laws of the United States' encompasses both federal statutes themselves and federal regulations that are properly adopted in accordance with statutory authorization." *Id*. quoting *City of New York v. Federal Communications Commission*, 486 U.S. 57, 63 (1988).

The Sixth Circuit identified three different types of federal preemption:

> (1) express preemption, which occurs when Congress expresses an intent to preempt state law in the language of the statute; (2) field preemption, where Congress intends fully to occupy a field of regulation; and (3) conflict preemption, where it is impossible to comply with both federal and state law, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 425 (6th Cir. 2000) (internal quotation marks omitted). "Regardless of the type of preemption at issue, this court's duty is to 'determine whether state regulation is consistent with the structure and purpose' of applicable federal law." *State Farm Bank*, 539 F.3d at 342 (quoting *Gade v. National Solid Wastes Management Association*, 505 U.S. 88, 98 (1992).

In *Novotney v. Walgreen Co.*, No. 22 C 3439, 2023 WL 4698149, -- F. Supp. 3d -- (N.D. Ill. July 23, 2023), the plaintiff filed a similar lawsuit alleging state-law claims of fraud, breach of warranty, negligent misrepresentation and unjust enrichment with respect to the sale of three percent hydrogen peroxide,

> Plaintiff's claims are rooted in defendant's practice of selling 3% hydrogen peroxide solution while representing that it is a "first aid antiseptic" to be used for "treatment of minor cuts and abrasions." In fact, plaintiff claims, hydrogen peroxide is ineffective in treating minor cuts and abrasions because, contrary to popular belief, it does not reduce rates of wound infection. While hydrogen peroxide may kill some potentially harmful bacteria, plaintiff claims, it does more harm than good because it also destroys beneficial bacteria and healthy cells that promote healing.

*Novotney*, 2023 WL 4698149 at *1.

In *Novotney*, the court provided a detailed explanation of the process by which the Food and Drug Administration regulates OTC products such as hydrogen peroxide:

> The Secretary of Health and Human Services has "authority to promulgate regulations for the efficient enforcement" of the FDCA, 21 U.S.C.A. § 371(a), which he accomplishes through the Food and Drug Administration ("FDA") and its Commissioner, 21 U.S.C. § 393(a), (b), (d)(2). Drug manufacturers must apply to the FDA for approval before marketing their products, so that the FDA may determine whether the drugs are safe and effective for use as labeled. 21 U.S.C. § 355(a), (b), (j); *see Wyeth v. Levine*, 555 U.S. 555, 566, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009).
>
> The FDA regulates over-the-counter ("OTC") drugs via its "Over the Counter Drug Review" process, which the Second Circuit has described as follows:
>
>> Commenced in 1972, the OTC Drug Review established FDA's "monograph" system for regulating over-the-counter drugs. *See* 21 C.F.R. § 330.10; 37 Fed. Reg. 9464 (May 11, 1972). While FDA must [typically] approve drugs as [generally recognized as safe and effective ("GRAS/E")] individually, the monograph system allows manufacturers to bypass individualized review. *See* 21 U.S.C. § 355; 21 C.F.R. § 330.10. Under this system, FDA issues a detailed regulation—a "monograph"—for each therapeutic class of OTC drug products. Like a recipe, each monograph sets out the FDA-approved active ingredients for a given therapeutic class of OTC drugs and provides the conditions under which each active ingredient is GRAS/E.
>
> *NRDC v. FDA*, 710 F.3d 71, 75 (2d Cir. 2013); *see In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prod. Liab. Litig.*, 144 F. Supp. 3d 699, 708-11 (E.D. Pa. 2015) (describing the "monograph system" as "essentially an expanded version of administrative notice-and-comment rulemaking" for drugs with active ingredients in longtime use).
>
> The FDA regulates 3% hydrogen peroxide solution for antiseptic use under a 1991 "tentative final monograph," *Topical Antimicrobial Drug Products for Over-the-Counter Human Use; Tentative Final Monograph for First Aid Antiseptic Drug Products*, 56 Fed. Reg. 33644 (July 22, 1991) ("1991 TFM"); *see* 21 C.F.R. § 330.10(a)(7)(i) ("After reviewing all comments, reply comments, and any new data and information or, alternatively, after reviewing a panel's recommendations, the Commissioner shall publish in the Federal Register a tentative order containing a monograph establishing conditions under which a category of OTC drugs or specific OTC drugs are generally recognized as safe and effective and not misbranded."). The 1991 TFM became final under the Coronavirus Aid, Relief and

6

Economic Security Act in 2020. *See* 21 U.S.C. § 355h(b)(8)(A). The monograph states as follows, in pertinent part:

> The submission forwarded by the manufacturer (Ref. 3) included labeling for a currently marketed product containing hydrogen peroxide solution U.S.P. 3 percent, which states: "First aid antiseptic" "For treatment of minor cuts and abrasions." The submission also included safety and effectiveness data from published articles and unpublished studies. These data indicate that hydrogen peroxide inhibits S. aureus, Salmonella typhosa, Escherichia coli (E. coli), Proteus vulgaris, Klebsiella pneumoniae, Streptococcus hemolyticus, and P. aeruqinosa. The manufacturer also provided in vitro data to show that 3 percent hydrogen peroxide reduced the number of S. aureus ATCC 6538P by 3 logs (3 log10) within 5 minutes and completely inhibited all bacteria within 10 minutes.
>
> In a separate OTC drug rulemaking, for OTC oral mucosal injury drug products, the agency found hydrogen peroxide (3 percent in aqueous solution) safe for short-term use up to 7 days. (See the Federal Register of July 26, 1983, 48 FR 33984 at 33993.)
>
> Hydrogen peroxide achieves its intended benefit in vivo by means of both a mechanical action and a measurable antibacterial action. Because hydrogen peroxide has been demonstrated to be both safe and effective for use in minor wounds, the agency is proposing to classify hydrogen peroxide (3 percent in aqueous solution) as Category I for use as a first aid antiseptic drug product.
>
> 1991 TFM, 56 Fed. Reg. at 33659.

*Id*. at *2-3.

Here, the gist of plaintiff's claim is that defendant misrepresented that the Product (three percent hydrogen peroxide solution) is an antiseptic "For Treatment of Minor Cuts and Abrasions." Compl. at ¶ 1, PageID.1. Plaintiff contends that defendant is also misrepresenting that the Product will assist in healing by shortening healing time. The label (a picture of which appears in the complaint) does not include any such language or "misrepresentation." *Id*. Rather, plaintiff reaches this conclusion because "[d]ictionaries define 'treat' as attempting to heal, improve or cure a condition." *Id*. at ¶¶ 2-3, PageID.2. In addition, plaintiff alleged that the FDA

7

never endorsed the labeling of hydrogen peroxide for "treatment", and that "hydrogen peroxide does not treat minor cuts and abrasions because no evidence supports a connection between the number of bacteria and reduction in healing time of a clean wound." *Id*. at ¶ 10, PageID.3.

In *Novotney*, the court found that such state law claims regarding three percent hydrogen peroxide solution involved express preemption. *Novotney*, 2023 WL 4698149 at *2. That court rejected the plaintiff's claim that "the FDA did not specifically approve the use of the word 'treatment' in connection with hydrogen peroxide," stating in pertinent part:

> [W]hether the FDA specifically approved the use of the word "treatment" is beside the point. The content of the product's label as it relates to its safety or effectiveness is a matter of federal law, and by claiming that some other terminology is necessary to ensure that the label is not misleading, plaintiff impermissibly claims that state law imposes requirements that are different from, additional to, or otherwise not identical with, the requirements of the FDCA. *See Turek v. Gen. Mills, Inc*., 662 F.3d 423, 427 (7th Cir. 2011) (explaining that similar claims about whether a label was misleading in stating the product's percentage daily value of fiber were preempted because, if successful, they would require the addition of "disclaimers" that were "not identical to the labeling requirements imposed on such products by federal law"). And a de minimis difference between the wording of the label and wording in a monograph does not save the claim, if it is clear that the label in question complies with federal standards by "advertis[ing] . . . accurate[ly]" the uses for which the product has been approved as safe and effective. *See Sapienza v. Albertson's Cos., Inc.*, No. CV 22-10968-RGS, 2022 WL 17404919, at *3 (D. Mass. Dec. 2, 2022); *see also id*. at *3 ("FDA preemption regulates [the relevant] standards generally – the subject matter of [the plaintiff's] state-law claims – even if the wordings slightly differ." (citing cases)). The legislative history of the preemption provision at issue supports this "commonsense interpretation." *Id*. (citing S. Rep. No. 105-43, at 64 (1997)) ("No State or local government is permitted to impose different or additional requirements that relate to the subject matter covered by the three Federal laws as they apply to nonprescription drugs and cosmetics. These include requirements imposed on product manufacture or composition, labeling, advertising, or any other form of public notification or communication.") (emphasis added).

*Novotney*, 2023 WL 4698149 at *4-5 (footnote omitted).

The Court finds this reasoning persuasive. Like the defendant in *Novotney*, defendant's label in this lawsuit complied with the federal standards applicable to three percent

8

hydrogen peroxide solution. Accordingly, plaintiff's state law claims are preempted. Other courts have reached the same result in cases involving similar claims that the labeling of three percent hydrogen peroxide solution as a "treatment for minor cuts and abrasions" violates state consumer laws. *See, e.g., Solak v. Target Corp.*, No. 3:22-CV-813, 2023 WL 5806326 at *7 (N.D.N.Y. Sept. 7, 2023) (finding the plaintiff's state law claims regarding the labeling of three percent hydrogen peroxide solution preempted by federal law citing *Novotney*); *Wright v. Walmart, Inc.*, No. 22-CV-02311-SPM, 2023 WL 5348861 at *5 (S.D. Ill. Aug. 21, 2023) (finding that the plaintiff's state law claims regarding the labeling of three percent hydrogen peroxide solution preempted under federal law). Accordingly, plaintiff's state law claims in Counts I, II, III, IV, V, and VI should be dismissed.

### B.     MMWA

Plaintiff's remaining federal claim is brought under the MMWA, a federal statute which "imposes certain requirements on manufacturers and merchants who choose to issue consumer warranties." *Kuns v. Ford Motor Co.*, 543 Fed. Appx. 572, 575 (6th Cir. 2013) (citing 15 U.S.C. § 2301 *et seq*.). "To state a claim under the MMWA, a plaintiff must present a sustainable claim for breach of warranty." *Id*. As this Court explained in *Tapply v. Whirlpool Corp.*, No. 1:22-cv-758, 2023 WL 4678789 at *8 (W.D. Mich. June 23, 2023):

> "Claims under the [MMWA] 'stand or fall with . . . express and implied warranty claims under state law.' " *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1017 (E.D. Mich. 2017) (quoting *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1227 (9th Cir. 2015) and citing *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1231 (11th Cir. 2016) ("The claims under the [MMWA] are identical to the other warranty claims noted because they are also based on state law."); *Raymo* [*v. FCA USA LLC*, 475 F. Supp. 3d 680, 704 (E.D. Mich. 2020] ("[T]he [MMWA] serves only to 'supplement' state-law implied warranties by prohibiting their disclaimer in certain circumstances and providing a federal remedy for their breach.")).

*Tapply*, 2023 WL 4678789 at *8. Once a plaintiff has identified a state law warranty claim,

> In order to state an actionable claim of breach of warranty and/or violation of the Magnuson-Moss Act, a plaintiff must demonstrate that (i) the item at issue was subject to a warranty; (ii) the item did not conform to the warranty; (iii) the seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts.

*Temple v. Fleetwood Enterprises, Inc.*, 133 Fed. Appx. 254, 268 (6th Cir. 2005).

Here, plaintiff's MMWA claim fails because she has no state law warranty claim with respect to the Product or its label as a "treatment;" any such state law claim is preempted by federal law. Accordingly, plaintiff's MMWA claim alleged in Count III should be dismissed.

### IV.    Recommendation

Accordingly, I respectfully recommend that defendant's motion to dismiss (ECF No. 5) be **GRANTED** and that this case be **terminated**.


Dated:  February 20, 2024                    /s/ Ray Kent
                                             RAY KENT
                                             United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).